### SAM ANDERSON v. THE STATE.

No. 1478. Decided March 16, 1898.

**1. Seduction—Indictment—Motion in Arrest.**

A motion in arrest of judgment for supposed defects in an indictment for seduction is properly overruled where the indictment is in accordance with approved forms and contains every essential allegation required by the statute.

**2. Same—Accomplice Testimony—Omission to Charge as to—Practice.**

If on the trial of a criminal case, it develops or tends to show that a witness is an accomplice or accessory, and the court omits to charge the law applicable to such testimony, the omission will be a subject for revision where defendant saved an exception to the charge upon that ground.

**3. Seduction—Accomplice or Accessory to.**

If on a trial for seduction, it was shown that a witness, subsequent to the seduction, having acquired knowledge of the fact through defendant, watched and saw defendant and prosecutrix engage in carnal intercourse; and that afterwards, by threatening to divulge what he had seen, he, with defendant's consent, compelled prosecutrix to permit him to have intercourse with her. Held, the witness was neither an accomplice nor an accessory to defendant in the seduction. He did not conceal defendant or give him any aid in the matter.

**4. Same—Corroboration of Prosecutrix.**

See opinion for facts stated, which the court hold amply sufficient to corroborate the prosecutrix as to defendant's promise and engagement to marry her; of his seduction of her by virtue of his promise to marry her, and of his consent and advice to her to have carnal intercourse with another in order to save her reputation on account of the carnal intercourse she had been having with himself.

**5. Proof of Acts of Intercourse With Others.**

Proof of after acts of carnal intercourse with others, by the prosecutrix, is no answer to the proposition that she was chaste when seduced by defendant.

**6. Same—Cross-examination of Witness—Res Gestae.**

On a trial for seduction, where defendant had introduced a witness by whom he

proved an act of carnal intercourse between said witness and the prosecutrix, Held, competent for the State as part of the res gestae of said testimony to prove by the prosecutrix what was said and done by said witness at the time of the act of carnal intercourse to induce her to submit to the wishes of said witness.

**7. Motion for New Trial—Practice.**

On a motion for new trial, it was not error for the court to strike out a number of subpoenas attached to the motion issued to various counties for a witness which were not shown in any manner to be relevant or pertinent to the motion.

APPEAL from the District Court of Rusk. Tried below before Hon. W. J. GRAHAM.

Appeal from a conviction of seduction; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with seducing Lucy Gatlin on the 10th of June, 1896.

The evidence for the prosecution was that the defendant paid attentions to the injured female during 1895 and 1896; that he became engaged to her in January, 1896, which engagement was never broken; seduced her in June, 1896, and continued sexual intercourse with her until the latter part of November, 1896. The witness Westfall says that he knew of the constant attentions of the defendant to the prosecutrix all the while; that he noticed defendant staid out late at nights with her; in the summer of 1896 he heard defendant mention his marriage engagement with her; that in November he "tackled" defendant about his conduct with her, and defendant owned up that he had been having carnal intercourse with her, and that he would let witness on to it; and to post himself near his (witness') father's barn on a certain night and he could see for himself; witness did so and saw prosecutrix and defendant copulate; he went to her next morning, told her what he had seen, and demanded similar accommodation, stating to her that he never intended to tell on her and Sam. On this point the prosecutrix testified that witness told her that if she did not submit to him he would· tell what he had seen her and Sam doing and ruin her good name. After both sides had closed the testimony and an hour and a half had intervened for dinner, the State recalled witness Westfall and proved by him that, while he stated to the prosecutrix that he would not tell on her and Sam, he led her to believe he would tell if she did not submit to him. Both these witnesses testified that she first refused and said that she must first consult Sam; that after consulting Sam she submitted, she saying that Sam advised her to do it, and that she submitted to Westfall under the promise that he would never tell on her and Sam. Westfall said that he was a little scared about this case at first, and she testified that defendant and Westfall were to furnish the money for her to leave the country on, and that Westfall did furnish his half; and she left and did not return to this county until about three months ago. She further says that Westfall is the father of her baby. He stated that he did not know whether he was or not.

*J. R. Arnold* and *N. B. Morris,* for appellant.—It was the duty of the trial court to submit the issue of accomplice to the jury whether requested or not, and especially so when the defendant requested the charge and excepted to the court's failure to give it.

Westfall's testimony was damaging, and his complicity and connection with the affair tainted him with suspicion tending to show a conspiracy between him and defendant showing such a proximate connection therewith as that the jury ought to have been guarded against this testimony. And this charge being necessary, it follows that the court should have told the jury that one accomplice can not be corroborated by another, giving the proper application to the facts of this case. In this connection the defendant says that while the court told the jury that they could not convict upon the uncorroborated testimony of the injured female, he nowhere made a proper application of this principle to the facts of this case, telling them the nature and character of such necessary corroboration. While the doctrine as to rule in cases where an accomplice testifies is fundamental, the defendant cites the following authorities: Herring v. State, 42 S. W. Rep., 301; Mitchell v. State, 38 Texas Crim. Rep., 325; Delavan v. State, 29 S. W. Rep., 385; Hines v. State, 27 Texas Crim. App., 104; Zollicoffer v. State, 16 Texas Crim. App., 312; Anderson v. State, 20 Texas Crim. App., 312. The court erred in permitting the State, over objections of the defendant, to prove by the prosecutrix the details of a conversation between herself and Westfall in the absence of defendant, in which, among other things, she said that Westfall told her that he caught her and defendant having intercourse, and that if she did not do him the same way he would tell it and ruin her name. This testimony was damaging, because it had the effect to strengthen the proof of sexual intercourse between her and the defendant, and was doubtless considered by the jury as corroborative of what she said as her excuse for submitting to Westfall. The court nowhere limited this testimony in his charge. It was objected to as hearsay and a bill reserved. The court erred in refusing to give special charges 1, 2, and 3, requested by the defendant.

The court erred in striking out and refusing to consider, in passing upon defendant's motion for a new trial, the process and other court papers showing that the prosecutrix (who was furnished money to leave the country on by defendant and Westfall) was evading the process of the court and could not be found at a former term.

The evidence is not sufficient to sustain this conviction, and the trial court therefore erred in overruling the defendant's motion for a new trial.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of seduction, and his punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

The court did not err in overruling appellant's motion in arrest of judgment. The indictment is in accordance with the approved forms, and contains every essential allegation required by our statute.

Appellant contends that the court committed an error in failing to give a charge on accomplice testimony, and apply the same to the witness Will Westfall. The court explains his refusal to give a charge on said subject, because appellant asked no written charge applying the law of accomplice testimony to the witness Westfall, but merely made an oral statement to the effect that he excepted to the charge of the court because of the omission. If the evidence developed on the trial placed the witness Westfall in the category of an accomplice to the crime charged against appellant, or tended to show that he was such accomplice so as to raise that issue, the exception taken by appellant to the failure of the court to give a charge on that subject sufficiently raised the question, so that it becomes a material inquiry whether or not the evidence tended to show that said Westfall was an accomplice. An accomplice is defined to be "any person who, either as a principal, accomplice, or accessory, is connected with the crime by unlawful act or omission on his part, transpiring either before, at the time of, or after the commission of the offense, and whether or not he was present and participated in the crime." See note to article 781, Willson's New Code Crim. Proc. Now, there is no pretense in the record that Westfall was a principal or an accomplice to the offense charged. According to the testimony of the prosecutrix, the alleged offense occurred on or about the 7th of June, 1896, and there is no testimony tending to show that Westfall knew anything of the offense until long afterwards; so that he could be regarded neither as a principal nor an accomplice, technically speaking. If he was connected with it at all criminaliter, it was as an accessory. An accessory is defined to be "any one who, knowing that an offense has been committed, conceals the offender, or gives him any other aid, in order that he may evade arrest, or trial, or the execution of his sentence." Now, the testimony shows that Westfall's first knowledge of any illicit relations between appellant and the prosecutrix was about the middle of November, 1896, when he says appellant told him that he had had intercourse with the prosecutrix, and that he would let him into it. It seems that the witness some time previous to this had suspicioned that appellant was having illicit intercourse with the prosecutrix, and about November tackled him on the subject, and finally defendant owned up to him that he had been having carnal intercourse with the prosecutrix; that he suggested to him that, if he would station himself at a certain place on a certain night in November, he would see him in the act; that he did station himself at the appointed place, and saw appellant and the prosecutrix in the act of copulation; that on the next day he went to the prosecutrix's house, accosted her on the subject, and told her that, unless she acceded to his request, he would tell on her what he had seen the night before. The prosecutrix refused his request, but, on his threatening to expose her, told him to wait until she could see Ander-

son (appellant). She saw him subsequently, and appellant, according to her testimony, first told her not to agree to have intercourse with him, but subsequently stated that it would be best, as they were going to marry anyhow; and that, no doubt if she refused, Westfall would tell, but, if she agreed, and submitted to him, that he was a friend of his, and would not betray her; that in a day or two afterwards she saw Westfall, and then agreed to have intercourse with him to prevent exposure. This is, in the main, all the testimony on the subject, and it is substantially testified to by both the prosecutrix and Westfall; and, unless this evidence places him the role of an accessory, then he was not an accomplice under the statute requiring accomplices to be corroborated. An accessory must not only know that an offense has been committed, but he must conceal the offender, or give him some aid, in order that he may evade arrest, or trial, or the execution of the sentence. Mere knowledge that an offense has been committed does not constitute one an offender. There must be some overt act on his part, either of concealment of the offender or giving him some aid in the matter. The testimony not only fails to show that he participated in the offense as an accessory, but shows expressly that he did not agree in anywise with appellant to conceal the offense, or to give him any aid. His entire connection with the offense seems to have been to use his information to procure a similar accommodation from the prosecutrix. He used his knowledge, derived from the appellant, simply for this purpose. So far as the record advises us, he gave appellant no aid, nor did he conceal him in anywise; and, it appears, when called on by the proper tribunal, he made no concealment of what he knew of the offense. We fail to see how, under the circumstances of this case, he could be considered an accessory, which is the only pretense of his connection in a criminal way with the charge. To put the case strongly, if it be conceded that Westfall knew all about the act of seduction on the part of the appellant of the prosecutrix by information derived subsequent thereto, and he used that information to procure carnal intercourse with the prosecutrix himself, which appears to be, under the evidence, the full measure of his offending, this would not and does not constitute him an accomplice in the crime charged against appellant. The evidence shows no more than this, and it did not require of the court a charge on accomplice testimony as to this witness Westfall. The court gave a proper charge on accomplice testimony as applied to the prosecutrix, and this was all that was required on the subject.

Appellant contends that, although Westfall was not an accomplice, his testimony does not corroborate the prosecutrix in such manner as to have authorized a conviction of the appellant for the crime of seduction; and that there is no other testimony, aside from Westfall's, that tends in the remotest degree to connect appellant with the crime charged. We have examined the record carefully in this regard, and we can not agree to the contention of appellant. The prosecutrix's testimony unquestionably shows a case of seduction. She testified to acts

of carnal intercourse between herself and appellant, and that this was superinduced by a promise of marriage on the part of appellant. The other testimony shows that during the time when she testifies the act of seduction occurred appellant paid her assiduous attention. To this effect is the testimony of the father of the prosecutrix, as well as that of Westfall. Westfall testified to an admission made to him in the summer of 1896 by the defendant, Anderson, of his engagement to marry the prosecutrix. This is some testimony certainly tending to corroborate the prosecutrix as to the engagement of marriage. The prosecutrix has testified to an engagement antedating the 7th of June, 1896, which was the time of the seduction. She further testified that the nuptials would be consummated on the 1st of April; that they were subsequently postponed at the appellant's request until June 10th, and then until the fall, and finally until January, 1897; and that she was not apprised of the breach of his promise until the first week in December, 1896. During this time appellant was having intercourse with her; and in November it appears that he admitted to Westfall, according to his testimony, that he was having such intercourse with her, and by appellant's own suggestion the witness Westfall witnessed an act of carnal intercourse between them. It occurs to us that the testimony of the witness Westfall strongly tended to corroborate the prosecutrix, both as to the engagement to marry and as to the acts of carnal intercourse between them, and that this was brought about by a promise to marry her on the part of the appellant. It appears from the testimony of Westfall that the prosecutrix had such confidence in appellant that when she had been circumvented by his treachery, and when Westfall demanded that she sacrifice herself to his desires, she even then appealed to appellant to know whether she should permit this to save her reputation. These afteracts of the prosecutrix of carnal intercourse with others is no answer to the proposition that she was a chaste woman at the time of her seduction by appellant. There is nothing in the testimony to gainsay this. All the evidence tends to show that appellant for the first time debauched her by obtaining her confidence and love. He induced her first to submit to his own embraces. Trusting him, as she did, she was circumvented by his arts, until, to save herself from ruin, at his suggestion she was induced to submit herself to the embraces of another. These were all the subsequent acts, and, as stated before, there is nothing in the record to lend color to the idea that she was otherwise than a pure and chaste woman prior to the time when she yielded to appellant's seductive machinations.

We do not believe there was any error in the court admitting the testimony of the prosecutrix as to a conversation between herself and Will Westfall. Defendant had already proved, as original testimony by the witness Westfall, an act of carnal intercourse between prosecutrix and said witness. It was then competent for the State in cross-examination to prove what was said and done in connection with said act of carnal intercourse,—how she was induced; in other words, what was said by

Westfall at the time to induce her to submit to his wishes. This was a part of the res gestae of the testimony that had been brought out by appellant.

Nor, in our opinion, did the court err in striking out from appellant's motion for a new trial a number of subpoenas issued to various counties for the witness Lucy Gatling. We fail to see how said matters were pertinent or relevant as a part of the motion for a new trial. They tended to show no fact exculpatory of the appellant nor inculpatory of the witness Lucy Gatling. As far as Westfall was concerned, said papers could not have been introduced to inculpate him, or to show that he was an accomplice. If they had been offered in evidence, we fail to see what useful purpose they could serve, so far as this court is concerned. There are no errors in the record, and the judgment is affirmed.

*Affirmed.*