### Peter Gorzell v. The State.

#### No. 2144. Decided May 22, 1901.

**1.—Seduction—Charge of Court.**

On a trial for seduction it is essential that the court, in the charge to the jury should define the term "seduction;" and especially so in a case where the evidence tends to show that the prosecutrix was not a chaste woman who had consented to the carnal intercourse only on account of defendant's promise to marry her, and the confidence she reposed in his promise.

**2.—Same—Carnal Intercourse—Corroboration of Prosecutrix.**

On a trial for seduction, the fact that the defendant had carnal intercourse with the prosecutrix is a vital issue in the case; and to obtain a legal conviction she must be corroborated upon this point.

**3.—Same—Evidence Insufficient.**

See the opinion for facts stated which are held wholly insufficient to support a conviction of seduction.

Appeal from the District Court of Bexar. Tried below before Hon. John H. Clark.

Appeal from a conviction of seduction; penalty, four years imprisonment in the penitentiary.

Appellant was charged by the indictment with the seduction of Rosa Wanat, on the 31st day of March, 1900.

The case is sufficiently stated in the opinion.

*Ball & Fuller, C. S. Robinson,* and *Newton & Ward,* for appellant, filed a most able, elaborate, and interesting brief and argument, which the Reporter regrets can not be reproduced for want of space.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of seduction, and his punishment assessed at four years confinement in the penitentiary; hence this appeal.

There are a number of errors assigned in the record, but it is only necessary to discuss two of them. Appellant insists the court erred in his charge in failing to define the term "seduction." An examination of the court's charge discloses there was no charge given on this subject. We have held in a number of cases that it was necessary for the court in its charge to define this term. Putnam v. State, 29 Texas Crim. App., 456; McCullar v. State, 36 Texas Crim. Rep., 213; Merrell v. State, 42 Texas Crim. Rep., 19. While such a charge should be given in all cases, it would unquestionably be error for the court to fail or refuse to give a charge defining the term where there was evidence tending to show that prosecutrix was not a chaste woman, and that her consent to copulation was not obtained on account of any trust or confidence reposed because of the promise to marry. In this case, the testimony of the prosecutrix is mainly, if not solely, relied on to establish the act or acts of carnal intercourse, as also the promise to marry. On this point her testimony is exceedingly meager. She testifies "that on the 3d day of March, 1900, at Lewis Miller's, in Bexar County, Texas, defendant promised to marry me if I would let him have intercourse with me, and that it was alone on account of his promise to marry me that I let him have intercourse with me." There is no narration as to any persuasion or insistence on his part. For aught that appears, the proposition was made to marry her if she would have intercourse with him, and she assented thereto. We have no suggestion of trust, and because she loved him, believing he would carry out the engagement then made, or that may have existed between them theretofore, she confided in him, and on this account surrendered her virtue. More than this, her reputation as a chaste woman is assailed by a number of witnesses, and not supported by any. In addition to this, acts of hers are testified to which ordinarily do not appertain to honorable and chaste women, such as sitting in men's laps, and other undue familiarities, and some of these acts are not gainsaid by her. Under the circumstances of this case, if there ever was one in which the term "seduction" should have been defined to the jury, this was such a case.

What has heretofore been said leads up to another proposition relied on by appellant, to wit, that the evidence does not sustain the verdict of

the jury. In this connection, we believe appellant is correct. Prosecutrix, as stated before, testified as to the promise of marriage. The only evidence that can be said to support her·on this point is one witness, to the affect that appellant said on one occasion that he was going to marry her,· and it was further shown he was in the habit of associating with, writing to, and calling her "Sweetheart." If it be conceded that an agreement to marry existed between them, still it is not shown, outside of prosecutrix's own testimony, that appellant had carnal intercourse with her at any time. Evidently she had had carnal intercourse with some one, because she gave birth to a child. It is not only shown from the record that others had equal opportunities with appellant to have had such intercourse with her, but others testified to such acts of intercourse. The fact that appellant had carnal intercourse with prosecutrix is a vital issue in this case, and to obtain a conviction she must be corroborated upon this point. More than this, as has been previously stated, the record leaves her reputation for chastity under a cloud. A number of witnesses testified as to her reputation in this regard, and in addition they give evidence of specific acts of unchastity, and of other. acts which are not suggestive of virtuous conduct. It is true she denies ever having copulated with any other person than defendant, but she does not deny receiving favors from other men, nor of sitting in other men's laps, though she does deny that she put her arms around the neck of Frank Gorzell. She explains how she came to lie on the bed with another man, and why it was she kept her clothes in the back room of the saloon occupied by two young men. She does not deny that she frequented said saloon, drank beer, and threw dice there. Furthermore, she fixes no time when she and appellant were to consummate their marriage, and she did not even tell her mother about her state of pregnancy until she had been enceinte six months, but explains this by stating she did not know she was pregnant. Although she testifies that she had never had intercourse with any other person prior to the last of March, and that was with appellant, she is oblivious as to whether or not that act of copulation caused her any pain. She continued these acts of copulation with him afterwards, with no insistence on her part that the marriage should be consummated, nor was there any effort shown on her behalf to bring this about until she was about to be confined, and she heard that appellant was to be married to another girl. It does not occur to us that this record shows she was a female of that chaste and unsullied character whose honor and reputation the law is intended to protect. This is much like the case of Spenrath v. State (Texas Criminal Appeals), 48 Southwestern Reporter, 192. In that case this language was used: "We do not believe our statute making seduction an offense was intended to cover acts of mere illicit intercourse between a man and a woman under the age of 25 years, and to be used, in case something should happen on account of the illicit intercourse, to constrain the man guilty of the illicit intercourse to marry the female. It,

was intended, rather, to protect the chaste and virtuous woman who reposes confidence in the promise of marriage, and may be overreached and overpersuaded by the arts and blandishments of the seducer."

It is not necessary to notice other assignments, but for the errors discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*