## MACK BARNARD v. THE STATE.

### No. 3112.   Decided April 12, 1905.

**1.—Seduction—Argument of Counsel—Allusion to Defendants Failure to Testify.**

   Where the district attorney in his argument said: "When the baby was only three days old, defendant goes to the house where prosecutrix was in bed; he saw the baby, and said to Mrs. Reese it was his baby and he wanted it (meaning the baby) ; and now, gentlemen, who has denied it?" Held that such statement was an allusion to the failure of the defendant to testify, the facts showing that he was the only one who could deny it, and is reversible error.   Overruling Bruce v. State, 53 S. W. Rep., 867.   Following Washington v. State, 8 Texas Crim. Rep., 944; Hanna v. State, 10 Ct. Rep., 40; Wallace v. State, 81 S. W. Rep. 966.   Brooks, Judge, dissenting.

**2.—Sufficiency of Evidence.**

   See opinion for evidence held sufficient to support a conviction for seduction.

   Appeal from the District Court of Red River.   Tried below before Hon. Ben H. Denton.

   Appeal from a conviction of seduction; penalty, a fine of $2,000. The prosecuting witness testified in her examination in chief among other things, as follows: "The defendant and myself were engaged to be married; he had been waiting on me ever since December or January. It is true that he had carnal intercourse with me. We had been engaged to be married two or three weeks or longer when he had carnal intercourse with me.   I could not tell you how long the defendant had made propositions to me for me to submit to him, before I finally yielded to him, but it was after he had promised to marry me.   I cannot tell you what he said to me when I yielded my person to him, I have forgotten.   When he made this proposition to me he said we were engaged and that there would be no harm in it, we were engaged and would be married anyway.   When he made that proposition, he had promised to marry me.   I don't know how many times he made that proposition before I yielded to him."   Question by State's counsel: "Now tell the jury why you submitted to him and permitted him to have intercourse with you?"   Answer: "Well because he promised to marry me and we were already engaged and I loved him, that was the reason and he said we were going to marry any how and there would be no harm in it.   No one ever had intercourse with me except defendant.   I had a child by him."   She also denied ever offering to have carnal intercourse with any one.   The defense by way of impeachment introduced witnesses who testified that she had offered to have intercourse with another for pay prior to her intercourse with defendant.   The mother of the prosecutrix testified to the courtship between defendant and her daughter and that she heard him speak of marrying her and that he said after the child was born that it was his and he wanted it.   The State also introduced other testimony as to defendant's declarations as to his carnal intercourse with prosecutrix and that the child was

his. There was also testimony that defendant tried to suppress the prosecution. The testimony for defendant was chiefly of an impeaching character both as to the testimony and the character for chastity of the prosecutrix.

On cross examination prosecutrix testified as follows: Q. "How came you to have intercourse with Mack Barnard the first time you had intercourse with him?" A. "Well because we were engaged and he promised to marry me." Q. "That was the only reason?" A. "And then I loved him." Q. "Did you not swear on a former trial of this case that the only sole reason that you had intercourse with him was because you loved him?" A. "Yes sir." Q. "You swore that?" A. "Yes sir." Q. "Ain't that the fact?" A. "Yes sir, but then I would not have done it if he had not told me that we were going to get married and it would not be no harm." Q. "And you would not have done it if you had not loved him, you said that a while ago?" A. "Why of course I did." Q. "Well is it a fact?" A. "If it had not been I would not have said it."

*W. S. Thomas,* for appellant.—A promise of marriage is the essential element necessary to complete the statutory offense of seduction. To constitute the offense it must appear that the female was seduced, that is, was lead away from the paths of virtue by the wiles and arts of her lover, and then debauched under a promise of marriage. If it appears that she was led, even in part, to consent through fear, lust, or any other consideration, the conviction will not stand. Barnes v. State, 37 Texas Crim. Rep., 320; Cole v. State, 40 Texas, 147; Putnam v. State, 29 Texas Crim. App., 454.

The court erred in the second paragraph of his charge to the jury wherein the word seduction is defined to mean the leading away a female from the path of virtue; to entice or persuade her by means of a promise of marriage to surrender her chastity and have carnal intercourse with the man making such promise, in that such definition limits the means used in accomplishing the seduction to a naked promise of marriage and eliminates all wiles, blandishments, arts, etc., necessary under the law to complete the act of seduction, and the court should have charged the jury that the word "seduction" means to lead away a female from the paths of virtue by means of arts, wiles and blandishments by which her affections are gained and her virtuous instincts overturned until she is willing, under a promise of marriage alone, to submit to elicit carnal intercourse with the man so seducing her. State v. Reeves, 97 Mo., 668; Morris v. State, 31 Texas Crim. Rep., 597, and Putnam v. State supra.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of seduction—the punishment being fixed at a fine of $2,000. The former appeal of this case will be found reported in the 8 Texas Ct. Rep., 386.

Appellant insists that the evidence is not sufficient to show that prosecutrix was seduced, as that word is used in the statute, and construed by this court. In our opinion the evidence amply supports the conviction, and shows perfect corroboration of the prosecutrix as to the seduction. The charge of the court in all respects complies with Putnam v. State, 29 Texas Crim. App., 454, and Barnes v. State, 37 Texas Crim. Rep., 320, and the opinion on the former appeal of this case. All of the special charges requested by appellant, so far as applicable to the facts, were given in the main charge of the court.

The district attorney in his argument used this language: "When the baby was only three days old, defendant goes to the house where prosecutrix was in bed; he saw the baby, and said to Mrs. Reese it was his baby and he wanted it (meaning the baby); and now gentlemen, who has denied it?" Appellant excepted to this statement of the State's counsel on the ground that the same was a reference to the failure of the defendant to testify—the facts showing that defendant was the only one who could deny it. The record shows that the testimony was introduced showing defendant made this statement in the presence of prosecutrix' mother, as stated by the district attorney. In Bruce v. State, 53 S. W. Rep., 867, we held that the statement of the prosecuting attorney in his closing argument in the case in which defendant did not testify, asking why, if an alleged omission by the accused was not true, did they not put some one on the stand to disprove it,—was not error. The writer believes the Bruce case announced a correct proposition of law; but the majority of the court hold that Washington v. State, 8 Texas Ct. Rep., 944; Hanna v. State, 10 Texas Ct. Rep., 40, and Wallace v. State, 81 S. W. Rep., 966, support appellant's contention, that the above statement is an allusion to the failure of the defendant to testify, and requires a reversal. The majority of the court overrule the Bruce case, supra. The writer does not agree with this, and believes the language of the district attorney is not susceptible to the criticism made. I do not believe that any statement from which an inference might be drawn that the defendant did not testify should authorize reversal. There should be some direct affirmative allusion to the failure of the defendant to testify, before this court should reverse. However, under the holding of the majority of the court, on account of the language of the district attorney above copied, the judgment is reversed and the cause remanded.

*Reversed and remanded.*