RAMON G. MUNOZ v. THE STATE.

No. 22741. Delivered March 1, 1944.
Rehearing Denied April 26, 1944.

The opinion states the case.

*E. B. Simmons*, of San Antonio, for appellant.

*Ernest S. Goens*, State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was assessed the death penalty on a charge of murder.

A very fair and comprehensive statement from appellant's brief is sufficient to place the case before us. From it we copy the following:

"On the night of May the 20th, 1943, the deceased left his home at about 6:30 in the afternoon with a friend, stating that

he was going out to drink some beer. He went, among other places, to what is known as the Grape-Vine Inn on Mitchell Street in the City of San Antonio and while there he met Munoz and Flores. Also at the Grape-Vine Inn on this occasion, were the Trevino's who were acquaintances of the deceased and also of the appellant and his companion. It was through the Trevino's that the deceased made the acquaintances of the appellant.

"The friend who had taken the deceased to said roadhouse, after seeing deceased's acquaintances there, the Trevino boys, departed from the Inn rather early in the evening, leaving the deceased, Rojo in care of the Trevino's. The entire company engaged in drinking beer. The testimony is conflicting as to the exact time of the departure of appellant from the Inn, some fixing it at about 10:30 P. M. and others later. There is also conflict as to whether the deceased left with the Trevino's and the appellant and Flores, or whether he left only in company of the appellant and Flores. The next morning the body of the deceased was discovered on a side street in the South part of San Antonio, his death having resulted from blows on the head with a blunt instrument.

"After some investigation by the officers, the appellant was arrested, wherupon he admitted his guilt to the officers and subsequently signed a written confession. He contends that both his admission of guilt and the signing of the written confession were the result of threats made against him by one of the arresting officers and that the confession is not true.".

Flores made a confession of guilt and subsequently repudiated it. Both of these parties claimed upon the trial of the case that their connection with the commission of the offense was under the direction and coercion of the two Trevino brothers, who were arrested but subsequently released.

Where a confession in proper form is introduced and evidence presented, which if true, would make it a free and voluntary confession of guilt, and there is found in the record evidence contradicting such statements, the admissibility of the confession depends upon the finding of fact which the court should submit to the jury. Such has been the holding of this court under an unbroken line of decisions. The officers to whom the confession was made in the instant case contradicted the statement of appellant as to the manner of making the statement and the court properly submitted the issue to the jury in his charge. There was no error in doing so.

As above indicated, Munoz and Flores were together on the night of the commission of the crime. Admittedly, they left the saloon together and returned to their home together. Several of the witnesses say that they left the saloon in company with the victim of the murder while the Trevino boys left a short while in advance of them and not at the same time. The story told in the confession found in the record is a horrible relating of a brutal murder for the purpose of robbing the old man of a small amount of money. First denying the correctness of this confession, both appellant and Flores testify to a connection with the crime, claiming that the Trevino brothers had borrowed their car to get gasoline and take the old man home, but returned in about thirty minutes with the old man dead in the front seat and without getting gasoline. Their story was submitted to the jury and it is evident that the jury did not believe the occurrence took place as related by them. This evidence, so far as it presented a defense, was a matter entirely for the jury's consideration.

A motion was made, accompanied by an agreement between the two, for the purpose of having Flores first placed on trial in order that appellant might have his testimony freed from any fear of prosecution. The district attorney dismissed the case against Flores and he was permitted to testify in behalf of appellant, apparently untrammeled by fear of prosecution if we may form our judgment from the things he related. He did involve himself but his evidence by no means cleared appellant of a part in the crime. It is true that they both related a story of the Trevino brothers returning the car with the old man dead on the front seat. Yet, they admitted striking him with a tire tool, pulling him out of the car, robbing him, leaving him at the edge of the street and returning to their home where they arose the next morning and went to their work without making any report of the crime.

Reversal of this case is sought chiefly on the ground that the action of the State in dismissing the case against Flores did not comply with the statutes because he was afterward rearrested. Admittedly, this court has in a somewhat similar case so held, (Puryear v. State, 98 S. W. 258) but this case was specifically over-ruled in Hobbs v. State, 112 S. W. 308 and that opinion has been consistently followed in numerous cases to the present time. See Jones v. State, 214 S. W. 322, Gerber v. State, 232 S. W. 334, Crissmann v. State, 245 S. W. 438, Frazier v. State, 29 S. W. (2d) 750, Henry v. State, 149 S. W. (2d) 115.

Appellant relies chiefly upon Smith v. State, 116 S. W. 572, for the contention that reversible error was committed. In that case Smith had a motion seeking to place Eugene McClure who was charged with the same offense on trial first, whereupon, the district attorney dismissed his case. but went immediately to the Justice Court, filed a new complaint and had McClure arrested in the court room in the presence of the jury panel for the week. The Smith case refers to Hobbs v. State, supra, with approval and calls attention to the fact that when defendant files a motion for a severance, he is entitled to a severance or to a dismissal of the case against the party whose evidence he claims a right to have. We do not consider that the Smith case goes far enough to settle the question now before us in appellant's favor. The purpose of the severance statute is served in the instant case as we view the record. The witness gave his evidence and there is no indication that he did not tell his story as freely and as fully as if he had been tried and acquitted. He involved himself in the crime sufficiently to support a prosecution and it would be going entirely too far for this court to presume that he would have told a more favorable story to appellant under a different circumstance. Neither do we think that the Smith case, or any other with which we are familiar, can be so construed.

We make no effort to here discuss the purpose and effect of the statutory enactments giving to the party on trial a right to have the testimony of others charged with the same offense made available to him further than the instant case requires. In a general way, however, the rights involved are for the party on trial and not the witness he seeks to have made available to him. The State has no right to file complaints against valuable witnesses to the defense of a case merely for the purpose of preventing them from testifying in behalf of the accused. When a question is raised the State does have the right to dismiss a pending case against any person when the provisions of the statutes for that purpose have been met. If it chooses to do so and does act in good faith, the party on trial is not injured and has no grounds for complaint. That the State did not act in good faith in this case does not sufficiently appear to warrant us in saying that its action was a subterfuge and should not be tolerated as claimed by the appellant. From the statement above made in discussing the Smith case it does so appear. That case is clearly distinguishable.

We have carefully considered every question presented in the appeal and it is our conclusion that no error is shown.

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING.

KRUEGER, Judge.

In his motion for a rehearing, appellant reiterates his contention that we erred in our original opinion in holding that no error was committed by the trial court in declining to sustain his motion for a severance, and sustained the State's motion to dismiss the case against Flores, a co-defendant, thus making him (Flores) available as a witness for appellant; that the act on the part of the State in requesting the dismissal of the case against Flores was not made in good faith but was in fact done to circumvent the law relating to the subject of severance. He draws his conclusion from the fact that Flores was not discharged but held in jail during the trial and that after he had testified in behalf of appellant, he was re-indicted for the offense. Upon a casual consideration, his deductions from the facts appear plausible; but when the facts are such that divergent conclusions may be reached, we would not be justified in following the one which leads to insincerity when the other leads to good faith, because the presumption obtains that every person acts in good faith until the contrary is made to appear. In the instant case, Flores testified in behalf of the appellant. It is not shown, or even claimed, that he did not freely and fully testify to all the facts within his knowledge relating to the offense for which appellant was on trial. In the absence of such a showing, no injury is made to appear. The fact that Flores, by his own testimony, implicated himself in the murder, which subsequently caused him to be re-indicted, would not justify the conclusion that the dismissal of his case was not made in good faith, nor would the fact that he was held in custody during the trial of appellant's case justify such a conclusion. He was a witness for the appellant, and if the District Attorney and the Court deemed it advisable to hold him in custody in order to secure his attendance in court during the trial, it would not authorize us to say that the dismissal of his case was to circumvent the law. Consequently, we see no reason to recede from the conclusion expressed in our original opinion. Appellant cites us to the case of Smith v. State, 116 S. W. 572. We have again examined that case and think that, on the facts, it is easily distinguishable from the instant case.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.